# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOHN HASTINGS, individually and on behalf of all others similarly situated,<br><br>Respondent,<br><br>v.<br><br>UNIKRN, INC., a Delaware corporation; UNIKRN BERMUDA, LTD., a Bermuda corporation; RAHUL SOOD, an individual, KARL FLORES, an individual; and DOES 1-10,<br><br>Appellants. | DIVISION ONE<br><br>No. 79499-0-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — This is a correction of error case. As such, it results in an unpublished opinion. In a correction of error case, we confine our analysis to the issues actually raised and briefed by the parties. In circumstances in which we are not confident that the parties have raised and briefed all pertinent issues, resolution by an unpublished opinion is warranted. This is one such case. Trial courts should exercise great care if asked to apply the result reached herein to any other dispute.

John Hastings filed a putative class action lawsuit against Unikrn, Inc., Unikrn Bermuda, Ltd. and certain Unikrn, Inc. employees in their individual capacities (collectively Unikrn) alleging that they violated federal securities law when selling him and other investors digital tokens called UnikoinGold Tokens. In response, Unikrn moved to compel arbitration, asserting that Hastings and all

other purchasers had agreed to terms and conditions when purchasing UnikoinGold Tokens that required arbitration of any dispute arising from the sale. Unikrn now appeals from the denial of its motion, asserting that the trial court erred when it concluded that Hastings and those similarly situated did not ever agree to arbitrate any dispute arising out of the sale of the UnikoinGold Tokens. Because Unikrn fails to establish error in the trial court's ruling, we affirm.

I

Unikrn, Inc., a Delaware corporation with its principal place of business in Seattle, runs an online "esports" entertainment and gambling platform. Unikrn, Inc. is the sole owner and shareholder of its subsidiary, Unikrn Bermuda, Ltd., a Bermuda corporation with its principal place of business in Seattle. Unikrn Bermuda, Ltd. has no employees of its own, and all its business has been conducted through Unikrn, Inc.'s officers, directors, and agents, including Unikrn, Inc.'s chief executive officer Rahul Sood and chief marketing officer Karl Flores.

In 2017, Unikrn Bermuda, Ltd. conducted an online public sale of digital tokens, known as UnikoinGold Tokens, that could be used on Unikrn's websites for playing, wagering on, and watching esports. Unikrn Bermuda, Ltd., through Unikrn, Inc.'s employees, established a website where users could register for the token sale and purchase UnikoinGold Tokens. This website contained several web pages requiring potential users to establish a personal account, enter personal information, and verify their contact information. One of the web pages (the "address verification web page") required users to type in a physical street address. The address verification web page displayed a checkbox located

next to an affirmation statement underneath the fields requiring users to type in their address.  The affirmation statement read "I have read and understood Unikrn Token sale Terms of Service and the Privacy Policy, and hereby agree to them."[1]  The phrase "Terms of Service" contained an embedded hyperlink to a document entitled "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."  The first section of this document explicitly stated the following: "PLEASE READ THESE TERMS OF TOKEN SALE CAREFULLY.  NOTE THAT SECTION 15 CONTAINS A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER, WHICH, IF APPLICABLE TO YOU, AFFECT YOUR LEGAL RIGHTS.  IF YOU DO NOT AGREE TO THESE TERMS OF SALE, DO NOT PURCHASE TOKENS."

Users were required to fill in their address and to check the box next to the affirmation statement before the web page would permit users to click the "SAVE YOUR PROFILE" button to proceed with registering for the token sale.  If a user did not check the box next to the affirmation statement but nevertheless attempted to proceed with the sale, the user was prevented from doing so and a new line of text would appear above the "SAVE YOUR PROFILE" button stating, "You must agree with **Terms of service** before creating your account."[2]

On September 23, 2017, John Hastings, a resident of the state of Nevada, accessed Unikrn Bermuda, Ltd.'s token sale website and purchased UnikoinGold Tokens.  Then, approximately a year later, Hastings filed a putative class action lawsuit against Unikrn, Inc., Unikrn Bermuda, Ltd., and Unikrn, Inc. employees

---

[1] The phrases "Terms of Service" and "Privacy Policy" were written in blue font.
[2] The quoted phrase was written in purple font.

including Rahul Sood and Karl Flores, in King County Superior Court, alleging multiple violations of federal securities laws.

Unikrn subsequently moved to compel arbitration and stay judicial proceedings pursuant to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" arbitration provision. In response, Hastings disputed whether he had ever agreed to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."

The trial court concluded that it could not rule, as a matter of law, for either party due to the presence of genuine disputes of material fact about whether Hastings ever agreed to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE." Thereafter, the trial court conducted an expedited evidentiary hearing to determine whether Hastings ever agreed to be bound by the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," issued findings of fact and conclusions of law, and denied Unikrn's motion to compel arbitration. After Unikrn filed a motion to reconsider, the trial court issued amended findings of fact and conclusions of law, but did not vacate its order denying Unikrn's motion to compel arbitration.

Unikrn appealed, and a commissioner of this court granted Unikrn's subsequent motion to stay proceedings in the trial court pending the outcome of this appeal.

II

Unikrn first contends that we should review the trial court's order deferring its ruling on Unikrn's motion to compel arbitration until after it conducted an

4

evidentiary hearing. Because such an order was not appealable prior to the completion of the evidentiary hearing and is not reviewable now that the evidentiary hearing has been completed, we decline to consider Unikrn's contentions regarding this order.

RAP 2.2(a) sets forth the superior court decisions from which a party may appeal as a matter of right. Johnson v. Rothstein, 52 Wn. App. 303, 305, 759 P.2d 471 (1988). Of the decisions included in this rule, only two could be thought to apply to the circumstances of this case:

> (1) *Final Judgment.* The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.
> . . . .
> (3) *Decision Determining Action.* Any written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action.

RAP 2.2(a).

Plainly, the order deferring the court's ruling on Unikrn's motion to compel arbitration was neither a final judgment nor a decision determining the action, as it required an evidentiary hearing and did not grant or deny the motion. Thus, the trial court's order deferring its ruling pending an evidentiary hearing was not appealable. However, once the trial court held an evidentiary hearing and denied the motion to compel arbitration, Unikrn had an order from which it could appeal. Hill v. Garda CL Nw., Inc., 179 Wn.2d 47, 54, 308 P.3d 635 (2013). The question then becomes whether, as part of the appeal from the denial of its motion to compel arbitration, the order deferring the superior court's ruling on the motion and requiring an evidentiary hearing is reviewable.

The answer is no.  Unikrn seeks, following an evidentiary hearing resolving disputed questions of fact, to have us review a decision that determined that such a hearing was required.  This request is nothing more than a repackaging of an argument long ago rejected in Washington: that an appellate court should, when considering an appeal following a trial, review the denial of a pretrial summary judgment motion that was premised on the trial court's determination of the presence of material disputed questions of fact.  See Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993) ("When a trial court denies summary judgment due to factual disputes, as here, and a trial is subsequently held on the issue, the losing party must appeal from the sufficiency of the evidence presented at trial, not from the denial of summary judgment." (citing Johnson v. Rothstein, 52 Wn. App. 303, 759 P.2d 471 (1988))); Johnson, 52 Wn. App. at 306 ("[A]n order denying summary judgment, based upon the presence of material, disputed facts, will not be reviewed when raised after a trial on the merits.").  We therefore decline to review the trial court's order herein deferring its ruling on the motion to compel arbitration, as it was premised on the court's ruling that disputed questions of fact were in need of resolution.

III

Unikrn's primary contention on appeal is that the trial court erred when it denied the motion to compel arbitration by finding that Hastings never assented to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."  This is so, Unikrn asserts, because the record establishes that Hastings was on

6

inquiry notice of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" and agreed to that document's stated terms by checking the box on the address verification web page affirming that he had "read and understood Unikrn Token sale Terms of Service and the Privacy Policy, and hereby agree[d] to them."  In response, Hastings contends that the trial court's ruling is supported by three findings of fact that are all supported by substantial evidence: (1) that a reasonable Internet user would not have understood that the phrase "Terms of Service" was hyperlinked to a contract requiring review and assent (Finding of Fact 19), (2) that the affirmation statement on the website did not require Hastings to certify that he had read, understood, and agreed to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" but, rather, required that Hastings so certify as to the "Unikrn Token sale Terms of Service" (Finding of Fact 17), and (3) that the hyperlink text on the web page did not link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" on the day that Hastings purchased UnikoinGold Tokens (Finding of Fact 26).  Hastings asserts that each of these findings independently supports the trial court's ruling.[3]

---

[3] Although Hastings' briefing does not state this explicitly, he is essentially arguing that Findings of Fact 17, 19, and 26 each independently identify substantial evidence sufficient to support the trial court's subsequent finding that Hastings never assented to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."  This finding is set forth in Finding of Fact 28, which states:

> In sum, although the Plaintiff entered into a contract with Unikrn Bermuda by which he purchased UnikoinGold Tokens, based on the totality of the evidence presented at the evidentiary hearing, the court finds that the Plaintiff did not agree to be bound by the terms of the document entitled, "**Unikrn Bermuda Ltd. Terms of Token Sale**," including the arbitration provision that is included in that document.

Thus, when Hastings asserts that Findings of Fact 17, 19, and 26 each independently support the trial court's order, what he appears to mean is that they each independently establish, sufficiently to persuade a reasonable trier of fact, that Hastings did not assent to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," and that the absence of such assent supports the trial court's order denying the motion to compel arbitration.

We review the denial of a motion to compel arbitration de novo. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (2009).

"Regardless of whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, or the Washington Uniform Arbitration Act (UAA), chapter 7.04A RCW, applies," our analysis as to whether Hastings' claims are subject to arbitration begins in the same manner. Weiss v. Lonnquist, 153 Wn. App. 502, 510, 224 P.3d 787 (2009). "While a strong public policy favoring arbitration is recognized under both federal and Washington law, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Satomi Owners Ass'n, 167 Wn.2d at 810 (citations omitted) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)). "Thus, our threshold inquiry concerns whether the parties entered into a valid agreement to arbitrate." Weiss, 153 Wn. App. at 511 (citing McKee v. AT & T Corp., 164 Wn.2d 372, 394, 191 P.3d 845 (2008)). The party attempting to enforce an arbitration agreement bears the burden of proving the existence of such an agreement.[4] Weiss, 153 Wn. App. at

---

We focus on the findings identified by Hastings because they are the only findings to which Unikrn both assigns error and presents argument in the argument section of its briefing. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (stating that a party abandons assignments of error unsupported by argument). Although Unikrn assigns error to Findings of Fact 17, 18, 19, 21, 22, 25, 26, and 28, Unikrn does not present any argument addressing its assignment of error to Findings of Fact 18, 21, and 22. Furthermore, the arguments pertaining to Finding of Fact 25 are identical to those pertaining to Finding of Fact 17. Thus, we evaluate the parties' arguments pertaining to Findings of Fact 17, 19, 26, and 28.

[4] Unikrn attempts to place the burden of proof on Hastings by asserting that all parties agreed that Hastings entered into some agreement with Unikrn because he did in fact purchase UnikoinGold Tokens and that this necessarily means Hastings agreed to arbitration. Unikrn's argument is, essentially, that proving the existence of *any* contract is the same as proving the existence of *the* contract requiring arbitration. This is plainly wrong. While the parties agree that some contract was formed because Hastings purchased UnikoinGold Tokens, they vigorously dispute whether the parties agreed to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," which is the agreement that contains an arbitration clause. As the "UNIKRN BERMUDA LTD

511, 514-15 (citing Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 765, 162 P.3d 1153 (2007)).

In Washington, "[f]or a contract to exist there must be mutual assent to its essential terms." Jacob's Meadow Owners Ass'n, 139 Wn. App. at 765 (citing Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388-89, 858 P.2d 245 (1993)). "In determining the mutual intention of contracting parties, the unexpressed, subjective intentions of the parties are irrelevant; the mutual assent of the parties must be gleaned from their outward manifestations." Saluteen-Maschersky v. Countrywide Funding Corp., 105 Wn. App. 846, 854, 22 P.3d 804 (2001) (citing City of Everett v. Estate of Sumstad, 95 Wn.2d 853, 855, 631 P.2d 366 (1981)). "Normally, the existence of mutual assent or a meeting of the minds is a question of fact." Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994) (citing Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wn.2d 572, 586 n.24, 790 P.2d 124 (1990)). "A finder of fact may deduce mutual assent to an agreement from the circumstances surrounding a transaction, inferring the existence of a contract based on a course of dealings between the parties or a common understanding within a particular commercial setting. Weiss, 153 Wn. App. at 511 (citing Hoglund v. Meeks, 139 Wn. App. 854, 870-71, 170 P.3d 37 (2007)). When a party signs a contract without reading its terms, "that party cannot successfully argue that mutual assent was lacking as long as the party was not deprived of the opportunity to read the contract, the contract was 'plain and unambiguous,'

TERMS OF TOKEN SALE" is the agreement Unikrn is seeking to enforce, it is Unikrn's burden to establish that Hastings actually assented to that specific contract, as opposed to any other.

the party was capable of understanding the contract, and no fraud, deceit, or coercion occurred." Yakima County, 122 Wn.2d at 389 (citing Skagit State Bank v. Rasmussen, 109 Wn.2d 377, 381-84, 745 P.2d 37 (1987)).

We review challenged findings of fact to determine if they are supported by substantial evidence. Steele v. Lundgren, 85 Wn. App. 845, 850, 935 P.2d 671 (1997). "'Substantial evidence' means evidence that is sufficient 'to persuade a rational, fair-minded person of the truth of the finding.'" Blackburn v. State, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016) (internal quotation marks omitted) (quoting Hegwine v. Longview Fibre Co., 162 Wn.2d 340, 353, 172 P.3d 688 (2007)). The party claiming error has "the burden of showing that a finding of fact is not supported by substantial evidence." Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799, 804 P.2d 1262 (1990). If the findings are supported by substantial evidence, a reviewing court is not permitted to "substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). "Unchallenged findings of fact are verities on appeal." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010) (citing Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002)).

Herein, we will review each of the findings of fact challenged by Unikrn that Hastings contends independently support the trial court's ruling denying the motion to compel arbitration. Thus, we consider whether substantial evidence supports the following findings: (1) that a reasonable Internet user would not have understood that the phrase "Terms of Service" was hyperlinked to a

10

contract requiring review and assent (Finding of Fact 19), (2) that the affirmation statement on the address verification web page did not require Hastings to certify that he had read, understood, and agreed to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" but, rather, required that Hastings so certify as to the "Unikrn Token sale Terms of Service" (Finding of Fact 17), and (3) that the hyperlink text on the address verification web page did not link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" on the day that Hastings purchased UnikoinGold Tokens (Finding of Fact 26).

A

Unikrn first contends that the trial court erred when it found that a reasonable Internet user would not have understood that the phrase "Terms of Service" in the affirmation statement contained a hyperlink to a contract requiring review and assent. This is so, Unikrn asserts, because the layout of its website and the blue colored font used for the phrase "Terms of Service" provided reasonable notice, as a matter of law, that the phrase contained a hyperlink to a contract requiring review and assent. In response, Hastings contends that the trial court's finding is supported by substantial evidence and that the lack of reasonable notice of the presence of a link made unclear and ambiguous "what, if anything, [Hastings] was agreeing to." Hastings has the better argument.

In Washington, "[w]hether particular notice was reasonable is ordinarily a question of fact."[5] Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co., 135

---

[5] However, "when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." Havens v. C & D Plastics, Inc., 124 Wn.2d 158, 181, 876 P.2d 435 (1994). Unikrn appears to misunderstand this standard in its briefing. Citing to Meyer v. Uber Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017), Unikrn asserts that the trial court's finding

11

Wn. App. 760, 767, 145 P.3d 1253 (2006) (citing <u>Serv. Chevrolet, Inc. v. Sparks</u>, 99 Wn.2d 199, 204, 660 P.2d 760 (1983); <u>McChord Credit Union v. Parrish</u>, 61 Wn. App. 8, 12, 809 P.2d 759 (1991)); <u>see</u> <u>also</u> <u>Lano v. Osberg Constr. Co.</u>, 67 Wn.2d 659, 663, 409 P.2d 466 (1965) ("What constitutes notice must be determined from the facts and circumstances of each case."). Thus, we review the trial court's finding to determine whether it is supported by substantial evidence. <u>Steele</u>, 85 Wn. App. at 850.

The trial court herein found, as Finding of Fact 19, that

> [a] reasonable user would not have understood that the light-blue-colored phrase, "***Terms of Service,***" was hyperlinked to a contract for review and assent. Text can be colored for aesthetic purposes without being hyperlinked to a separate file. Here, nothing on the screen stated that the blue text was hyperlinked, and nothing on the screen required or requested the user to click on the blue text as a prerequisite to advancing to the next screen.

In challenging this finding, Unikrn does not contend that the trial court was incorrect that text can be colored for aesthetic purposes. Nor does Unikrn contest that nothing on the address verification web page stated that the blue text was hyperlinked and that users were not required to click on the hyperlink as a prerequisite to advancing to the next screen of the website. Indeed, these

---

regarding reasonableness is actually a conclusion of law requiring de novo review. But this is not so.

In <u>Meyer</u>, the Second Circuit reviewed de novo a trial court's reasonableness determination. 868 F.3d at 73. The trial court in <u>Meyer</u>, however, did not conduct any fact finding. 868 F.3d at 73 n.6. Instead, it concluded as a matter of law that no reasonable fact finder could have found that the notice provided was reasonable. <u>Meyer</u>, 868 F.3d at 73. Thus, the <u>Meyer</u> court acknowledged that whether notice was reasonable constituted a factual issue. Herein, because the trial court conducted an evidentiary hearing and entered findings of fact, we properly review those findings to determine whether they are supported by substantial evidence.

Furthermore, even if <u>Meyer</u> had held that reasonableness is always a legal conclusion, that decision did not apply Washington law. Instead, it applied California law. <u>Meyer</u>, 868 F.3d at 74. Thus, Unikrn fails to establish that, in Washington, that which constitutes reasonable notice is always a question of law.

findings are well supported by substantial evidence in the record and provide sufficient support to persuade a rational fact finder of the truth of the trial court's ultimate finding that a "reasonable user would not have understood that the light-blue-colored phrase, '***Terms of Service***,' was hyperlinked to a contract for review and assent."[6]  In fact, Unikrn does not even once assert in its briefing that Finding of Fact 19 is not supported by substantial evidence.[7]  Thus, Unikrn fails both to meet its burden to establish that the trial court's finding is not supported by substantial evidence and to even acknowledge that it bears such a burden.[8]

Hastings contends that Finding of Fact 19 is, on its own, sufficient to support the trial court's order denying the motion to compel arbitration.  This is so, Hastings asserts, because the lack of reasonable notice about the presence of a link rendered ambiguous that which he was assenting to when he checked the affirmation box on the website.  We agree.

---

[6] Ex. 08-003 shows the Unikrn Bermuda UnikoinGold Sale website requiring users to check the box affirming that they have agreed to the "Terms of Service" before purchasing UnikoinGold Tokens.  It does not inform users that the website contains a link to the terms of service.  Ex. 08-006 shows the same website but with all required fields filled in.  It does not show that clicking the links to the Terms of Service and the Privacy Policy was required.

[7] Instead, Unikrn's briefing is mainly devoted to analyzing three federal cases that it asserts establish that the trial court is wrong as a matter of law: Meyer, 868 F.3d 66, Nicosia v. Amazon.com, Inc., 834 F.3d 220 (2d Cir. 2016), and Plazza v. Airbnb, Inc., 289 F. Supp. 3d 537 (S.D.N.Y. 2018).  However, as already noted herein, reasonableness of notice is a factual issue.

Even if this was a legal issue, of the cases cited by Unikrn, only Nicosia even purports to apply Washington law, 834 F.3d at 231-32, whereas Meyer and Plazza applied California law.  See 868 F.3d at 74; 289 F. Supp. 3d at 547.  Furthermore, the Nicosia court, in reviewing a motion to dismiss, actually concluded that the notice provided therein was *insufficient* as a matter of law to bind the user to the terms of Amazon's conditions of use.  834 F.3d at 228, 236.  While Unikrn is correct that the Second Circuit stated that on Amazon's website the phrases "'privacy notice' and 'conditions of use' appear in blue font, indicating that they are clickable links to separate webpages," that is not equivalent to a holding that the use of blue font provides reasonable notice of an embedded link as a matter of law.  Nicosia, 834 F.3d at 236.  In fact, even in Nicosia, the court noted that Amazon's web page contained "numerous other links . . . in several different colors, fonts, and locations."  834 F.3d at 236.

[8] Even in its assignments of error, Unikrn asserts that the trial court erred by entering Finding of Fact 19 but never asserts that Finding of Fact 19 is not supported by substantial evidence.

While a party may generally not escape the obligations of a contract by claiming to have never read its terms, it is a longstanding rule in Washington that being deprived of the opportunity to read a contract will prevent the mutual assent required to form a contract. See Yakima County, 122 Wn.2d at 389 (citing Skagit State Bank, 109 Wn.2d at 381-84). Herein, the lack of reasonable notice as to the existence of a link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" deprived Hastings of any meaningful opportunity to read its terms or to assent thereto.

B

Unikrn next contends that the trial court erred when it found that reasonable users would not have been on notice that the affirmation statement on the address verification web page required Hastings to certify that he had read, understood, and agreed to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" because it never referred to that document but, rather, required instead that Hastings so certify as to the "Unikrn Token sale Terms of Service" (Finding of Fact 17). In response, Hastings asserts that Finding of Fact 17 is supported by substantial evidence and that this finding independently supports the trial court's ruling. Again, Hastings has the more persuasive argument.

Finding of Fact 17 states:

Evaluating the totality of the circumstances, the court finds that a reasonably prudent consumer would not have been on inquiry notice that Unikrn Bermuda was requiring or requesting users to read, understand, or agree to the "**Unikrn Bermuda Ltd. Terms of Token Sale**" – especially inasmuch as (1) the statement next to the check box referred to an entirely different document, a document entitled, "***Unikrn Token sale [sic] Terms of Service;***" and (2) the document that actually was hyperlinked to the phrase, "***Terms of***

*Sale,*"[9] was not referred to in the statement that was next to the check box on the Address Verification Page.

Unikrn never asserts that this finding is not supported by substantial evidence.[10] Instead, Unikrn essentially contends that this finding is erroneous because the affirmation statement requiring agreement to the "Unikrn Token sale Terms of Service" and containing an embedded link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" provided users reasonable notice, as a matter of law, that they were agreeing to be bound by the terms of the hyperlinked contract, irrespective of that contract's title.[11] Br. of Appellant at 34 ("[R]easonable Internet users would know that, by marking a checkbox next to an affirmation statement that includes a hyperlink to a document, they are agreeing to the terms of that hyperlinked document."). Thus, Unikrn's contention regarding

---

[9] This appears to be a typographical error in the trial court's findings, as the linked text states "Terms of Service," rather than "Terms of Sale." Ex. 08-006. The phrase "Terms of Sale" does not appear on the address verification web page. See Ex. 08-006.

[10] Even in its assignments of error, Unikrn never asserts that Finding of Fact 17 is not supported by substantial evidence.

[11] Unikrn attempts to frame the differences between the affirmation statement and the title of the contract it seeks to enforce as minor typographical differences—asserting that the only differences between the affirmation statement and the title of the contract is the difference in phrasing between "Token sale Terms of Service" and "Terms of Token Sale". The record, however, shows another critical difference: the affirmation statement requires users to agree to *Unikrn's* Token sale Terms of Service, but the hyperlinked contract purports to set forth *Unikrn Bermuda Ltd.'s* Terms of Token Sale. This is not merely a minor typographical error, as the identity of the contracting parties is essential to every contract. See DePhillips v. Zolt Constr. Co., 136 Wn.2d 26, 31, 959 P.2d 1104 (1998) (concluding an employee handbook was not a contract because it did not identify the plaintiff as a party).

Indeed, it is plain that this distinction is not merely superficial herein because the two companies are not subject to the general personal jurisdiction of courts in the same localities: Unikrn, Inc. is a Delaware corporation with its headquarters in Washington, and therefore courts in Delaware and Washington have general personal jurisdiction over Unikrn, Inc. In contrast, Unikrn Bermuda, Ltd. is a Bermuda corporation with its headquarters in Washington, and therefore Washington courts, but not Delaware courts, have general personal jurisdiction over Unikrn Bermuda, Ltd.

Furthermore, Unikrn's argument presumes that reasonable users, when faced with inconsistency between an affirmation statement requiring their assent and a hyperlinked contract, would know that the inconsistency is the result of an error in the affirmation statement, rather than an error with the hyperlink. Unikrn does not cite to any authority or any evidence in the record to support such a presumption.

this finding is premised on the same erroneous assumption as its contention regarding Finding of Fact 19: that we should review this finding of fact de novo because whether or not a party has been given reasonable notice is actually a conclusion of law. However, as discussed in section III.A, whether notice was reasonable is a question of fact. Cascade Auto Glass, 135 Wn. App. at 767. Thus, we properly review Finding of Fact 17 to determine if it is supported by substantial evidence.

Herein, the record establishes that the affirmation statement on the address verification web page did not state that users agreed to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE." Instead, it states, "I have read and understood "Unikrn Token sale Terms of Service and the Privacy Policy, and hereby agree to them." The hyperlink embedded in the phrase "Terms of Service" linked to a contract entitled "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," not to a document entitled "Unikrn Token sale Terms of Service."[12] This evidence is sufficient to persuade a rational and fair-minded trier of fact of the truthfulness of the trial court's finding that reasonable users would not have been on notice that the affirmation statement required them to read and agree to the terms set forth in the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," rather than to a different document. This is particularly true given that the record establishes that the website also contained a link allowing users to view the Unikrn, Inc. Terms of Use; a reasonable user may have believed that the affirmation statement referred to those terms.

---

[12] No such titled document was ever offered as an exhibit by either party.

Hastings contends that Finding of Fact 17 is, on its own, sufficient to support the trial court's order denying the motion to compel arbitration. This is so, Hastings asserts, because Unikrn's failure to provide reasonable notice that it required Hastings to agree to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" prevented Hastings from assenting to those terms.

We conclude that Finding of Fact 17 independently supports the trial court's order denying the motion to compel arbitration. Hastings clicked a box next to an affirmation statement signifying his assent to the "Unikrn Token sale Terms of Service." Finding of Fact 17 essentially states that the address verification web page's affirmation statement never asked Hastings or any other user—in any way that would provide a reasonable user of notice of such a request—to agree to the terms set forth in the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE." Thus, Hastings and other users did not assent to those terms, including the arbitration clause, by clicking the box next to the affirmation statement on the address verification web page. This supports both the trial court's conclusion that Hastings is not bound to arbitrate his claims and the denial of the motion to compel arbitration.

C

Unikrn next contends that the trial court erred in entering Finding of Fact 26—that on the day Hastings purchased UnikoinGold Tokens the hyperlinked text in the affirmation statement did not link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE." This is so, Unikrn asserts, because to support its finding the trial court relied on Internet chat messages that (1) were erroneously

17

admitted as Unikrn's adoptive admissions and (2) do not actually support the trial court's finding. In response, Hastings asserts that the trial court properly admitted the Internet chat messages as adoptive admissions and that they establish that the hyperlinked text on the address verification web page did not link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE." While we hold that the chat messages were properly admitted as adoptive admissions, we also conclude that they do not support the trial court's finding that the link in the affirmation statement did not link to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."

"A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion." State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002) (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); State v. Luvene, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995)). "Abuse exists when the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" Darden, 145 Wn.2d at 619 (quoting Powell, 126 Wn.2d at 258).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is generally inadmissible. ER 802. However, an out of court statement offered to prove the truth of the matter asserted is not hearsay when the "statement is offered against a party and is (i) the party's own statement, in either an individual or a representative capacity or (ii) a statement of which the party has manifested an adoption or belief in its

truth."  ER 801(d)(2).

The Internet chat messages relied on by the trial court in Finding of Fact 26 plainly constitute adoptive admissions.  The trial court admitted the following message exchange between Unikrn, Inc.'s chief technical officer Daniel Rudolph and a user with the screen name Darin Oliver:

> Darin Oliver 23-Sep-17 06:26 PM
> alos . . . I have broken link whne zI truy to limk to the terms of sale
> . . .
> Darin Oliver 23-Sep-17 06:26 PM
> can you send me the right link
> [Rudolph] 23 Sep-17 06:26 PM
> to the faq ?
> Darin Oliver 23-Sep-17 06:26 PM
> no faq
> terms of sale
> [Rudolph] 23-Sep-17 06:26 PM
> . . .
> where did you find the broken link ?
> Darin Oliver 23-Sep-17 06:27 PM
> just for the record . . . when you click on the legal link from my end
> you get a bio on the Ethereum Co-founder Joins UnikoinGold
> Advisory Board that link needs to be fixed
> this I am sure of . . .
> . . .
> Darin Oliver 23-Sep-17 06:28 PM
> Again, please read the terms of sale and FAQ, available here (FAQ
> AS PDF).  Help us help you!  Thanks!
> . . .
> Darin Oliver 23-Sep-17 06:29 PM
> when I click on the terms of sale I get another link
> [Rudolph] 23-Sep-17 06:29 PM
> ok
> checking
> Darin Oliver 23-Sep-17 06:29 PM
> tried it with two browers
> thats why I asked for terms of sale..couldnt link to it
> [Rudolph] 23-Sep-17 06:31 PM
> **yep i botched the links**
> **fixed**
> **thx!**

19

(Emphasis added.) Rudolph, in his capacity as Unikrn, Inc.'s chief technical officer, plainly stated his belief in the truth of Darin Oliver's statements that a link to "terms of sale" was "botched" and had to be fixed. Thus, the trial court properly considered Darin Oliver's chat messages asserting that a link was not working properly as adoptive admissions, rather than as inadmissible hearsay.[13]

However, merely because the Internet chat messages were admissible does not necessarily mean that they support Finding of Fact 26. Indeed, the messages do not discuss the address verification web page affirmation statement or any links it contained. Instead, they discuss an entirely separate web page and a different link. When asked where he had found the broken link, Darin Oliver responded by quoting from Unikrn Bermuda, Ltd.'s website: "Again, please read the terms of sale and FAQ, available here (FAQ AS PDF). Help us help you! Thanks!" This exact language cannot be found on the address verification web page. However, it can be found on a different web page that prompts users to verify their account to participate in the UnikoinGold Token sale. Thus, the broken link discussed in the chat messages does not refer to the link in the affirmation statement on the address verification web page.

No other evidence in the record supports Finding of Fact 26. To the contrary, there was testimony presented from both Sood and Rudolph affirming that the link included in the affirmation statement on the address verification web

---

[13] Unikrn's contention that, to constitute an adoptive admission, Rudolph must have expressed agreement with Hastings' interpretation of the chat messages is meritless. Rudolph plainly adopted Darin Oliver's statements regarding the broken link by stating "yep i botched the links." The evidence was, therefore, not hearsay. See ER 801(d)(2)(ii).

page linked users to the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."[14] Therefore, Finding of Fact 26 is not supported by substantial evidence.

D

Findings of Fact 17 and 19 are supported by substantial evidence and support the trial court's finding that Hastings never assented to the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE." Because Hastings did not assent to be bound by the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," he is not required to comply with the arbitration provision it contains and arbitrate his claims against Unikrn. See Satomi Owners Ass'n, 167 Wn.2d at 810 (internal citations omitted) (quoting Howsam, 537 U.S. at 83). Thus, Unikrn has not established that the trial court erred by denying its motion to compel arbitration.[15]

IV

Unikrn has failed to establish that Findings of Fact 17, 19, and 28 are not supported by substantial evidence and do not support the trial court's ruling

---

[14] Hastings contends that the trial court's ruling is supported by Sood's testimony that he was certain that the hyperlinks found on both the web page prompting users to verify their account and the address verification web page linked to the same document. Hastings thus appears to assert that, if one link was broken, both necessarily must have been broken because they were supposed to link to the same document. Nothing in the record indicates that the trial court premised Finding of Fact 26 on such a contention and Hastings identifies no evidence in the record to support it. Indeed, Sood testified that the links on each page did not function in an identical manner, noting that one link would open the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" in a new tab and one would open it in the tab in which the user clicked on the hyperlink. In other words, although clicking on each hyperlink was intended to, in some manner, enable a user to review the terms of the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE," the hyperlinks on the different web pages were not identical.

[15] We therefore need not address the parties' arguments regarding whether the arbitration clause in the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE" requires Hastings to arbitrate against nonsignatories to that agreement.

21

denying the motion to compel.[16]  Because Unikrn has not met its burden to establish that the trial court's ruling is erroneous, we affirm.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____        _____
Andrus, J.                                          Appelwick, CJ

---

[16] Three considerations militate against publication of this opinion.  First, the parties do not address whether, under Washington law, the affirmation statement successfully incorporated by reference the "UNIKRN BERMUDA LTD TERMS OF TOKEN SALE."  When "the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." Satomi, 167 Wn.2d at 801.  While the parties need not physically attach a document to incorporate it by reference, it must be clear that all parties to the agreement "'had knowledge of and assented to the incorporated terms[.]'" W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc., 102 Wn. App. 488, 495, 7 P.3d 861 (2000) (quoting 11 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 30:25, at 234 (Richard A. Lord ed., 4th ed. 1999)).  The party asserting incorporation by reference bears the burden of proving it. Baarslag v. Hawkins, 12 Wn. App. 756, 760, 531 P.2d 1283 (1975).
        Second, the parties do not address whether the circumstances herein would warrant application of the doctrines of promissory or equitable estoppel.
        Third, the United States Supreme Court recently offered a definition of "actual knowledge" that, if applied by federal courts to these circumstances, could call into question the continued viability of the lower federal court "inquiry notice" authorities cited to us. See Intel Corp. Inv. Policy Comm. v. Sulyma, ___ U.S. ___, 140 S. Ct. 768, 776, 206 L. Ed. 2d 103 (2020).
        Accordingly, the application of this decision to future cases, in which these and other arguments may be fully pressed, seems minimal.