(Slip Opinion) OCTOBER TERM, 2019 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## INTEL CORPORATION INVESTMENT POLICY COMMITTEE ET AL. *v.* SULYMA

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 18–1116. Argued December 4, 2019—Decided February 26, 2020

The Employee Retirement Income Security Act of 1974 (ERISA) requires plaintiffs with "actual knowledge" of an alleged fiduciary breach to file suit within three years of gaining that knowledge, 29 U. S. C. §1113(2), rather than within the 6-year period that would otherwise apply. Respondent Sulyma worked at Intel Corporation from 2010 to 2012 and participated in two Intel retirement plans. In October 2015, he sued petitioners—administrators of those plans—alleging that they had managed the plans imprudently. Petitioners countered that the suit was untimely under §1113(2) because Sulyma filed it more than three years after they had disclosed their investment decisions to him. Although Sulyma had visited the website that hosted many of these disclosures many times, he testified that he did not remember reviewing the relevant disclosures and that he had been unaware of the allegedly imprudent investments while working at Intel. The District Court granted summary judgment to petitioners under §1113(2). The Ninth Circuit reversed. That court agreed with petitioners that Sulyma could have known about the investments from the disclosures, but held that his testimony created a dispute as to when he gained "actual knowledge" for purposes of §1113(2).

*Held*: A plaintiff does not necessarily have "actual knowledge" under §1113(2) of the information contained in disclosures that he receives but does not read or cannot recall reading. To meet §1113(2)'s "actual knowledge" requirement, the plaintiff must in fact have become aware of that information. Pp. 5–12.

   (a) ERISA's "plain and unambiguous statutory language" must be enforced "according to its terms." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 251. Although ERISA does not define the phrase

Syllabus

"actual knowledge," its meaning is plain. Dictionaries confirm that, to have "actual knowledge" of a piece of information, one must in fact be aware of it. Legal dictionaries give "actual knowledge" the same meaning. The law will sometimes impute knowledge—often called "constructive" knowledge—to a person who fails to learn something that a reasonably diligent person would have learned. The addition of "actual" in §1113(2) signals that the plaintiff's knowledge must be more than hypothetical. Congress has repeatedly drawn the same "linguistic distinction," *Merck & Co.* v. *Reynolds*, 559 U. S. 633, 647, elsewhere in ERISA. When Congress has included both actual and constructive knowledge in ERISA limitations provisions, Congress has done so explicitly. But Congress has never added to §1113(2) the language it has used in those other provisions to encompass both forms of knowledge. Pp. 5–8.

(b) Petitioners' arguments for a broader reading of §1113(2) based on text, context, purpose, and statutory history all founder on Congress's choice of the word "actual." Petitioners may well be correct that heeding the plain meaning of §1113(2) substantially diminishes the protection that it provides for ERISA fiduciaries. But if policy considerations suggest that the current scheme should be altered, Congress must be the one to do it. Pp. 8–11.

(c) This opinion does not foreclose any of the "usual ways" to prove actual knowledge at any stage in the litigation. *Farmer* v. *Brennan*, 511 U. S. 825, 842. Plaintiffs who recall reading particular disclosures will be bound by oath to say so in their depositions. Actual knowledge can also be proved through "inference from circumstantial evidence." *Ibid.* And this opinion does not preclude defendants from contending that evidence of "willful blindness" supports a finding of "actual knowledge." Cf. *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. 754, 769. Pp. 11–12.

909 F. 3d 1069, affirmed.

ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–1116

INTEL CORPORATION INVESTMENT POLICY
COMMITTEE, ET AL., PETITIONERS *v.*
CHRISTOPHER M. SULYMA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[February 26, 2020]

JUSTICE ALITO delivered the opinion of the Court.

The Employee Retirement Income Security Act of 1974 (ERISA) requires plaintiffs with "actual knowledge" of an alleged fiduciary breach to file suit within three years of gaining that knowledge rather than within the 6-year period that would otherwise apply. §413(a)(2)(A), 88 Stat. 889, as amended, 29 U. S. C. §1113. The question here is whether a plaintiff necessarily has "actual knowledge" of the information contained in disclosures that he receives but does not read or cannot recall reading. We hold that he does not and therefore affirm.

I

A

Retirement plans governed by ERISA must have at least one named fiduciary, §1102(a)(1), who must manage the plan prudently and solely in the interests of participants and their beneficiaries, §1104(a). Fiduciaries who breach these duties are personally liable to the plan for any resulting losses. §1109(a). ERISA authorizes participants and

their beneficiaries, as well as co-fiduciaries and the Secretary of Labor, to sue for that relief. §1132(a)(2).

Such suits must be filed within one of three time periods, each with different triggering events. The first begins when the breach occurs. Specifically, under §1113(1), suit must be filed within six years of "the date of the last action which constituted a part of the breach or violation" or, in cases of breach by omission, "the latest date on which the fiduciary could have cured the breach or violation." We have referred to §1113(1) as a statute of repose, which "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *California Public Employees' Retirement System* v. *ANZ Securities, Inc.*, 582 U. S. ___, ___ (2017) (slip op., at 5) (internal quotation marks omitted).

The second period, which accelerates the filing deadline, begins when the plaintiff gains "actual knowledge" of the breach. Under §1113(2), suit must be filed within three years of "the earliest date on which the plaintiff had actual knowledge of the breach or violation." Section 1113(2) is a statute of limitations, which "encourage[s] plaintiffs to pursue diligent prosecution of known claims." *Id.*, at ___ (slip op., at 5) (internal quotation marks omitted).

The third period, which applies "in the case of fraud or concealment," begins when the plaintiff discovers the alleged breach. §1113. In such cases, suit must be filed within six years of "the date of discovery." *Ibid.*

B

Respondent Sulyma worked at Intel Corporation from 2010 to 2012. He participated in two Intel retirement plans, the Intel Retirement Contribution Plan and the Intel 401(k) Savings Plan. Payments into these plans were in

turn invested in two funds managed by the Intel Investment Policy Committee.[1]  These funds mostly comprised stocks and bonds.  After the stock market decline in 2008, however, the committee increased the funds' shares of alternative assets, such as hedge funds, private equity, and commodities.  These assets carried relatively high fees. And as the stock market rebounded, Sulyma's funds lagged behind others such as index funds.

Sulyma filed this suit on behalf of a putative class in October 2015, alleging primarily that the committee and other plan administrators (petitioners here) had breached their fiduciary duties by overinvesting in alternative assets.  Petitioners countered that the suit was untimely under §1113(2).  Although Sulyma filed it within six years of the alleged breaches, he filed it more than three years after petitioners had disclosed their investment decisions to him.

ERISA and its implementing regulations mandate various disclosures to plan participants.  See generally 29 U. S. C. §§1021–1031; see also *Gobeille* v. *Liberty Mut. Ins. Co.*, 577 U. S. \_\_\_, \_\_\_–\_\_\_ (2016).  Sulyma received numerous disclosures while working at Intel, some explaining the extent to which his retirement plans were invested in alternative assets.  In November 2011, for example, he received an e-mail informing him that a Qualified Default Investment Alternative (QDIA) notice was available on a website called NetBenefits, where many of his disclosures were hosted.  See App. 149–151; see also 29 CFR §§2550.404c–5(b)–(d) (2019) (QDIA notices); §2520.104b–1(c) (regulating electronic disclosure).  This notice broke down the percentages at which his 401(k) fund was invested in stocks, bonds, hedge funds, and commodities.  See App. 236.  In 2012, he received a summary plan description explaining that the

_____

[1] Specifically the Intel Global Diversified Fund, in which his retirement contribution plan was automatically invested, and the Intel Target Date 2045 Fund, which he chose for his 401(k) plan.

funds were invested in stocks and alternative assets, *id.*, at 227, and referring him to other documents—called fund fact sheets—with the percentages in graphical form. See 29 U. S. C. §§1022, 1024(b) (summary plan descriptions); see also App. 307 (June 2012 fact sheet for his 401(k) plan fund); *id.*, at 338 (June 2012 fact sheet for his retirement contribution plan fund); *id.*, at 277–340 (other fact sheets provided during his tenure at Intel). Also in 2012, he received e-mails directing him to annual disclosures that petitioners provided for both his plans, which showed the underlying funds' return rates and again directed him to the NetBenefits site for further information. See 29 CFR §2550.404a–5; see also App. 242–243 (retirement contribution plan annual disclosure); *id.*, at 250–251 (401(k) plan annual disclosure).

Petitioners submitted records showing that Sulyma visited the NetBenefits site repeatedly during his employment. *Id.*, at 258–276. But he testified in his deposition that he did not "remember reviewing" the above disclosures during his tenure. *Id.*, at 175; see also *id.*, at 183, 193, 196–197. He also stated in a declaration that he was "unaware" while working at Intel "that the monies that [he] had invested through the Intel retirement plans had been invested in hedge funds or private equity." *Id.*, at 212. He recalled reviewing only account statements sent to him by mail, which directed him to the NetBenefits site and noted that his plans were invested in "short-term/other" assets but did not specify which. See, *e.g.*, *id.*, at 375.

The District Court granted summary judgment to petitioners under §1113(2), reasoning that "[i]t would be improper to allow Sulyma's claims to survive merely because he did not look further into the disclosures made to him." 2017 WL 1217185, *9 (ND Cal., Mar. 31, 2017). The Ninth

Circuit reversed. As relevant here,[2] the court construed "actual knowledge" to mean "what it says: knowledge that is actual, not merely a possible inference from ambiguous circumstances." 909 F. 3d 1069, 1076 (2018) (internal quotation marks omitted). Although Sulyma "had sufficient information available to him to know about the allegedly imprudent investments" more than three years before filing suit, the court held that his testimony created a dispute as to when he actually gained that knowledge. *Id.*, at 1077.

Several Circuits have likewise construed §1113(2) to require "knowledge that is actual," *id.*, at 1076, but one has construed it to require only proof of sufficient disclosure.[3] We granted certiorari, 587 U. S. \_\_\_ (2019), to resolve whether the phrase "actual knowledge" does in fact mean "what it says," 909 F. 3d, at 1076, and hold that it does.

## II

### A

"We must enforce plain and unambiguous statutory language" in ERISA, as in any statute, "according to its terms." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 251 (2010). Although ERISA does not define the phrase "actual knowledge," its meaning is plain. Dictionaries are hardly necessary to confirm the point, but they do. When Congress

---

[2] The court also addressed the separate question of what exactly a plaintiff must actually know about a defendant's conduct and the relevant law in order for §1113(2) to apply. That question is not before us and we do not address it.

[3] Compare *Caputo* v. *Pfizer, Inc.*, 267 F. 3d 181, 194 (CA2 2001); *Reich* v. *Lancaster*, 55 F. 3d 1034, 1056–1057 (CA5 1995); *Gluck* v. *Unisys Corp.*, 960 F. 2d 1168, 1176 (CA3 1992); *Radiology Center, S. C.,* v. *Stifel, Nicolaus & Co.*, 919 F. 2d 1216, 1222 (CA7 1990); *Brock* v. *Nellis*, 809 F. 2d 753, 754–755 (CA11 1987), with *Brown* v. *Owens Corning Investment Review Comm.*, 622 F. 3d 564, 571 (CA6 2010) ("Actual knowledge does not require proof that the individual Plaintiffs actually saw or read the documents that disclosed the allegedly harmful investments" (internal quotation marks omitted)).

passed ERISA, the word "actual" meant what it means to-day: "existing in fact or reality." Webster's Seventh New Collegiate Dictionary 10 (1967); accord, Merriam-Webster's Collegiate Dictionary 13 (11th ed. 2005) (same); see also American Heritage Dictionary 14 (1973) ("In existence; real; factual"); *id.*, at 18 (5th ed. 2011) ("Existing in reality and not potential, possible, simulated, or false"). So did the word "knowledge," which meant and still means "the fact or condition of being aware of something." Webster's Seventh New Collegiate Dictionary 469 (1967); accord, Merriam-Webster's Collegiate Dictionary 691 (2005) (same); see also American Heritage Dictionary 725 (1973) ("Familiarity, awareness, or understanding gained through experience or study"); *id.*, at 973 (2011) (same). Thus, to have "actual knowledge" of a piece of information, one must in fact be aware of it.

Legal dictionaries give "actual knowledge" the same meaning: "[r]eal knowledge as distinguished from pre-sumed knowledge or knowledge imputed to one." Ballen-tine's Law Dictionary 24 (3d ed. 1969); accord, Black's Law Dictionary 1043 (11th ed. 2019) (defining "actual knowledge" as "[d]irect and clear knowledge, as distin-guished from constructive knowledge").[4] The qualifier "ac-tual" creates that distinction. In everyday speech, "actual knowledge" might seem redundant; one who claims

———————

[4] Petitioners cite this dictionary's somewhat puzzling second definition of "actual knowledge," which it dubs "implied actual knowledge": "[k]nowledge of information that would lead a reasonable person to in-quire further." Black's Law Dictionary 1043 (11th ed. 2019). Not even this entry, however, appears to equate "implied actual knowledge" with "actual knowledge" as normally understood. It instead proceeds to ref-erence the common-law "discovery rule," *ibid.*, under which a limitations period begins when "the plaintiff discovers (or reasonably *should have* discovered) the injury giving rise to the claim," *id.*, at 585 (emphasis added); see also *Merck & Co.* v. *Reynolds*, 559 U. S. 633, 646 (2010). As we noted in *Merck*, that rule is broader than "*actual knowledge*." *Id.,* at 647.

"knowledge" of a topic likely means to suggest that he actually knows a thing or two about it. But the law will sometimes impute knowledge—often called "constructive" knowledge—to a person who fails to learn something that a reasonably diligent person would have learned. See *id.*, at 1043. Similarly, we held in *Merck & Co.* v. *Reynolds*, 559 U. S. 633 (2010), that the word "discovery," when used in a statute of limitations without qualification, "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Id.*, at 648. The addition of "actual" in §1113(2) signals that the plaintiff's knowledge must be more than "potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal." Black's Law Dictionary 53 (4th ed. 1951). Indeed, in *Merck*, we cited §1113(2) as evidence of the "linguistic distinction" between "'*actual knowledge*'" and the "hypothetical" knowledge that a reasonably diligent plaintiff would have. 559 U. S., at 646–647 (quoting §1113(2); emphasis in original).

Congress has drawn the same distinction elsewhere in ERISA. Multiple provisions contain alternate 6-year and 3-year limitations periods, with the 6-year period beginning at "the date on which the cause of action arose" and the 3-year period starting at "the earliest date on which the plaintiff acquired *or should have acquired* actual knowledge of the existence of such cause of action." §§1303(e)(6), (f)(5) (emphasis added); accord, §§1370(f)(1)–(2), 1451(f)(1)–(2). ERISA also requires plaintiffs challenging the suspension of benefits under §1085 to do so within "one year after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action." §1085(e)(9)(I)(iv). Thus, Congress has repeatedly drawn a "linguistic distinction" between what an ERISA plaintiff actually knows and what he should actually know. *Merck*, 559 U. S., at 647. And when Congress has included

both forms of knowledge in a provision limiting ERISA actions, it has done so explicitly. We cannot assume that it meant to do so by implication in §1113(2). Instead we "generally presum[e] that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP* v. *Resolution Trust Corporation*, 511 U. S. 531, 537 (1994) (internal quotation marks omitted).

Petitioners dispute the characterization of anything less than actual knowledge as constructive knowledge, arguing that the latter term usually refers to information that a plaintiff must seek out rather than information that is sent to him. But if a plaintiff is not aware of a fact, he does not have "actual knowledge" of that fact however close at hand the fact might be. §1113(2). And Congress has never added to §1113(2) the language it has used in other ERISA limitations provisions to encompass both what a plaintiff actually knows and what he reasonably could know.

As presently written, therefore, §1113(2) requires more than evidence of disclosure alone. That all relevant information was disclosed to the plaintiff is no doubt *relevant* in judging whether he gained knowledge of that information. See Part III, *infra*. To meet §1113(2)'s "actual knowledge" requirement, however, the plaintiff must in fact have become aware of that information.

### B

Petitioners offer arguments for a broader reading of §1113(2) based on text, context, purpose, and statutory history. All founder on Congress's choice of the word "actual."

As for text, petitioners do not dispute the normal definitions of "actual," "knowledge," or "actual knowledge." They focus instead on the least conspicuous part of the phrase "had actual knowledge": the word "had." §1113(2). Once a plaintiff receives a disclosure, they argue, he "ha[s]" the knowledge that §1113(2) requires because he effectively

holds it in his hand. *Ibid.* In other words, he has the requisite knowledge because he could acquire it with reasonable effort. That turns §1113(2) into what it is plainly not: a constructive-knowledge requirement.

Petitioners' contextual argument fails for the same reason. As they point out, ERISA's disclosure regime is meant to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101, 118 (1989) (quoting H. R. Rep. No. 93–533, p. 11 (1973)). This is the reason for ERISA's requirements that disclosures be written for a lay audience. See, *e.g.*, 29 U. S. C. §1022(a). Once plan administrators satisfy their obligations to impart knowledge, petitioners say, §1113(2)'s knowledge requirement is satisfied too. But that is simply not what §1113(2) says. Unlike other ERISA limitations periods—which also form §1113(2)'s context—§1113(2) begins only when a plaintiff actually is aware of the relevant facts, not when he should be. And a given plaintiff will not necessarily be aware of all facts disclosed to him; even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure. Although "the words of a statute must be read in their context," *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989), petitioners' argument again gives the word "actual" little meaning at all.

Petitioners also argue that §1113(2)'s plain meaning undermines its purpose of protecting plan administrators from suits over bygone investment decisions. If a plan participant can simply deny knowledge, they say, administrators will rarely get the benefit of §1113(2). But even if this is true, as it may well be, we cannot say that heeding the clear meaning of the word "actual" renders the statute so "'[in]coherent'" that it must be disregarded. *Kingdomware Technologies, Inc.* v. *United States*, 579 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 8).

For one thing, plan participants are not the only potential

plaintiffs subject to §1113. The Secretary of Labor, for example, may also sue imprudent fiduciaries for the benefit of plan participants. See §1132(a)(2). And the United States represents that the Secretary will have a hard time doing so within §1113(2)'s timeframe if deemed to have actual knowledge of the facts contained in the many reports that the Department receives from ERISA plans each year. See Brief for United States as *Amicus Curiae* 27–28. Moreover, the statute's repose period will still protect defendants from suits filed more than six years after the alleged breach. See §1113(1).

Petitioners may well be correct that heeding the plain meaning of §1113(2) substantially diminishes the protection that it provides for ERISA fiduciaries, but by the same token, petitioners' interpretation would greatly reduce §1113(1)'s value for beneficiaries, given the disclosure regime that petitioners themselves emphasize. Choosing between these alternatives is a task for Congress, and we must assume that the language of §1113(2) reflects Congress's choice. If policy considerations suggest that the current scheme should be altered, Congress must be the one to do it. See, *e.g.*, *Azar* v. *Allina Health Services*, 587 U. S. ___, ___ (2019).

Finally, petitioners argue that the plain meaning of "actual knowledge" renders an *earlier* version of §1113(2) incoherent. As originally enacted, the §1113(2) limitations period began either when the plaintiff gained actual knowledge of the alleged breach or when "a report from which [the plaintiff] could reasonably be expected to have obtained knowledge . . . was filed with" the Secretary of Labor. 29 U. S. C. §1113(2) (1976 ed.). That latter, constructive-knowledge clause was later repealed. See Omnibus Budget Reconciliation Act of 1987, §9342(b), 101 Stat. 1330–371. According to petitioners, if "actual knowledge" means what it says, then the original version of §1113(2) charged plan participants with learning what was sent to

the Secretary but not what was sent to them.

The version at issue here, however, is the current one—from which Congress removed any mention of constructive knowledge. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U. S. 241, 258–259 (2004) (internal quotation marks omitted). Section 1113(2)'s history thus more readily suggests that the current version does in fact require actual knowledge.

## III

Nothing in this opinion forecloses any of the "usual ways" to prove actual knowledge at any stage in the litigation. *Farmer* v. *Brennan*, 511 U. S. 825, 842 (1994). Plaintiffs who recall reading particular disclosures will of course be bound by oath to say so in their depositions. On top of that, actual knowledge can be proved through "inference from circumstantial evidence." *Ibid.*; see also *Staples* v. *United States*, 511 U. S. 600, 615–616, n. 11 (1994) ("[K]nowledge can be inferred from circumstantial evidence"). Evidence of disclosure would no doubt be relevant, as would electronic records showing that a plaintiff viewed the relevant disclosures and evidence suggesting that the plaintiff took action in response to the information contained in them. And though, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party," that is true "only if there is a 'genuine' dispute as to those facts." *Scott* v. *Harris*, 550 U. S. 372, 380 (2007) (quoting Fed. Rule Civ. Proc. 56(c)). If a plaintiff's denial of knowledge is "blatantly contradicted by the record," "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U. S., at 380.

Today's opinion also does not preclude defendants from contending that evidence of "willful blindness" supports a

finding of "actual knowledge."  Cf. *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. 754, 769 (2011).

In the case before us, however, petitioners do not argue that "actual knowledge" is established in any of these ways, only that they need not offer any such proof.  And that is incorrect.

*     *     *

For these reasons, we affirm.

*It is so ordered.*