**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHARLES GUENTHER,
*Plaintiff-Appellant*,

v.

LOCKHEED MARTIN CORPORATION;
LOCKHEED MARTIN CORPORATION
RETIREMENT PLAN FOR CERTAIN
SALARIED EMPLOYEES,
*Defendants-Appellees.*

Nos. 17-16984
18-15823

D.C. No.
5:11-cv-00380-
EJD

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted June 11, 2019
Submission Vacated June 13, 2019
Resubmitted August 18, 2020
San Francisco, California

Filed August 25, 2020

Before: Ronald M. Gould, Sandra S. Ikuta, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY*

## Employee Retirement Income Security Act

Affirming the district court's summary judgment in favor of defendants, the panel held that a claim of breach of fiduciary duty in violation of the Employee Retirement Income Security Act was time-barred under 29 U.S.C. § 1113(2), which provides that such a claim must be brought within three years of the date on which the plaintiff obtained "actual knowledge" of the breach.

First, the panel held that the defendant did not waive its statute of limitations affirmative defense, raised in answer to a second amended complaint filed during proceedings on remand from this court, either by litigating the case to judgment without ever raising the defense or by compelling plaintiff to exhaust administrative remedies without asserting the defense.

Addressing the merits of the defense, the panel applied *Intel Corp. Inv. Policy Committee v. Sulyma*, 140 S. Ct. 768 (2020), which held that "actual knowledge" requires more than merely a possible inference from ambiguous circumstances, but rather knowledge that is actual. Plaintiff alleged that in a letter regarding bridging of service under a retirement plan, defendant breached its duty to make accurate representations to a beneficiary. The panel concluded that the sending of this letter provided the basis for plaintiff's claim, and he had actual knowledge of

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendant's alleged misrepresentation upon receipt of the letter. The panel held that actual knowledge does not mean that a plaintiff has knowledge that the underlying action violated ERISA, not does it merely mean that the plaintiff has knowledge that the underlying action occurred. Instead, the defendant must show that the plaintiff was actually aware of the facts constituting the breach, as well as the nature of the breach. The panel concluded that plaintiff's suit was barred by the statute of limitations because he did not file suit within three years of obtaining actual knowledge of the alleged breach. The panel held that an exception for fraudulent concealment, triggering application of ERISA's six-year statute of limitations, did not apply. The panel also held that the district court did not abuse its discretion in denying plaintiff's post-judgment motion for reconsideration.

## COUNSEL

Andrew F. Pierce (argued), Pierce & Shearer LLP, Redwood City, California, for Plaintiff-Appellant.

Clarissa A. Kang (argued), R. Bradford Huss, and Dylan D. Rudolph, Trucker Huss APC, San Francisco, California, for Defendants-Appellees.

Stephanie B. Bitto (argued), Trial Attorney; Thomas Tso, Counsel for Appellate and Special Litigation; G. William Scott, Associate Solicitor for Plan Benefits Security; Kate S. O'Scannlain, Solicitor of Labor; Office of the Solicitor, United States Department of Labor, Washington, D.C.; for Amicus Curiae United States Secretary of Labor.

## OPINION

R. NELSON, Circuit Judge:

This appeal arises from a fiduciary's alleged breach of its duty to make accurate representations to a beneficiary under the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, we determine whether the beneficiary had actual knowledge of the alleged breach and failed to bring suit within the statute of limitations prescribed under ERISA. Because the record establishes that the beneficiary had actual knowledge of the alleged breach and failed to bring suit within the required three-year period, we hold his claim is time-barred.

## I

Appellant Charles Guenther began working for Lockheed Martin Corporation ("LMC") in 1983. From 1983 to 1991, he was an active participant in the company's retirement plan (the "Plan"), a defined benefit pension plan. He left LMC in 1991, but returned to work for the company again in 1997 and was able to "bridge" his previously accrued service credit under the Plan with his new service credit—meaning that upon starting his new term of employment with LMC, he was credited for his prior eight years of accumulated service under the Plan and could resume where he left off—in accordance with the Plan provisions in effect at the time.[1]

---

[1] During Guenther's first and second periods of employment with LMC, he participated in the Lockheed Retirement Plan for Certain Salaried Employees (the "Salaried Plan"). The Salaried Plan was later merged with the company's other defined benefit plans to form the Plan.

In 2001, Guenther left LMC for the second time, having accrued approximately 11.5 years of credited service under the Plan. While Guenther was employed elsewhere, the Plan was amended in 2005 (the "Plan Amendment"). The Plan Amendment provided that "no person who is re-employed by [LMC] on or after January 1, 2006 shall become an active Participant or earn Credited Service under the Plan with respect to any period commencing with such reemployment." Under the Plan Amendment, therefore, returning LMC employees hired after January 1, 2006, could participate in a different retirement plan—the Capital Accumulation Plan ("CAP")—but could not participate in or resume accruing additional credited service under the Plan.

In 2006, Guenther began negotiations with an LMC human resources representative to return to work for the company. Prior to interviewing with LMC, Guenther heard a "rumor" that the company "was going to be changing around their [retirement] plan." This was an important issue for Guenther. So during the negotiations that followed, he made clear that one of his "key conditions" of returning was that his "prior service be bridged so that he could receive the full benefit of the company's defined benefit retirement plan." The LMC representative indicated it was possible to bridge his prior service with his proposed new service, as Guenther had done when he previously returned to LMC in 1997, and provided him a form entitled "Application for Bridging of Prior Service," which Guenther submitted to LMC on July 17, 2006. The bridging form stated in part: "If your request is approved, the date you submit this application is the effective date that your current period of service will bridge with your prior service." On July 25, 2006, LMC Pension Plan Operations replied to his bridging request form in a letter (the "July Letter"), stating in relevant part:

> Since you were vested in a pension benefit
> provided by the Lockheed Martin
> Corporation Retirement Plan for Certain
> Salaried Employees, your prior periods of
> Lockheed/Lockheed Martin service will be
> bridged with your proposed current
> Lockheed Martin service.

According to Guenther, this was the only communication from LMC that he believed told him he would be accruing ongoing credited service in the Plan. No other retirement plan (including CAP) was brought to his attention at that time. The next month, Guenther terminated his then-existing employment, and then rejoined LMC in September.

After rejoining LMC, Guenther received a November 7, 2006 letter (the "November Letter") from LMC Pension Plan Operations which stated, in part, the following:

> Since you were vested in a pension benefit
> provided by the Lockheed Martin
> Corporation Retirement Plan for Certain
> Salaried Employees, your prior periods of
> Lockheed/Lockheed Martin service will be
> bridged with your current Lockheed Martin
> service. Consequently, your accrued benefit
> under the Capital Accumulation Plan has
> immediately become vested because the
> combined total of your Lockheed Martin
> controlled group service exceeds five years.
>
> It should be noted that because you are not
> currently participating in a Lockheed Martin
> defined benefit pension plan, you are not

> entitled to a pension benefit from Lockheed
> Martin for your current period of service.

Guenther was "surprise[d]" by this letter because he believed it contradicted LMC's assurance in the July Letter that he could bridge his prior service under the Plan. Guenther had checked his account numerous times online after he started at LMC in September to see whether he had begun accumulating time for his pension. No accumulated time was ever indicated. He stopped checking his account online once he received the November Letter.

Soon after receiving the November Letter, he contacted LMC's Employment Service Center ("ESC") to ask about the status of his pension, but was told the bridging issue was handled by CitiStreet, LMC's employer benefits service provider. CitiStreet then instructed him to contact ESC, which he did again, but "got the run around." In late November, after several more calls, Guenther asked to speak with someone at LMC's Human Relations office, but the person he was referred to was not there and did not return his calls. In December, Guenther visited a different Human Relations office and showed the program HR Representative the July and November Letters and asked for an explanation. The HR Representative thanked him for bringing the matter to her attention but never followed up. The record does not indicate that Guenther had any further communication with LMC regarding his pension plan for more than three years.

In 2009, Guenther spoke with another LMC employee who was hired several months before him. That employee indicated that he, like Guenther, had received a similar letter promising bridging but was later informed that his credited service under the Plan would not bridge. After speaking with his manager, Guenther contacted the ESC again in

March 2010 but received no information regarding the specifics of his plan. However, the ESC did discuss information from a Plan Amendment provision with him, stating that employees "[n]ewly or rehired on or after January 1, 2006 will not participate in [the] defined pension benefit plan." He later asked the legal department for a point of contact but was again told to contact HR.

Guenther never received additional credited service for his third period of employment with LMC, leaving his years of credited service at 11.5. Guenther was never given a plan summary or any other indication that he could appeal the issue to anyone other than those he had already contacted.

On November 8, 2010, Guenther filed his complaint ("FAC") against LMC alleging breach of contract and ERISA claims to recover benefits, and the case was removed to federal court. The district court dismissed his breach of contract claim and granted summary judgment on the ERISA claim in favor of LMC. On appeal, we affirmed the district court's determination, but remanded the case because Guenther alleged sufficient facts to raise a previously unasserted ERISA claim against LMC for breach of fiduciary duty under Section 1132(a)(3). *Guenther v. Lockheed Martin Corp.*, 646 F. App'x 567, 570 (9th Cir. 2016) (unpublished) (remanding to consider "whether [LMC] breached a fiduciary duty and, if so, whether Guenther is entitled to surcharge as a remedy").

On remand, Guenther filed a Second Amended Complaint ("SAC") pursuing the Section 1132(a)(3) claim for equitable relief in the form of surcharge—that is, monetary recovery for losses resulting from a fiduciary breach. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 440–42 (2011) (recognizing equitable estoppel, reformation, and surcharge as the three types of equitable relief available

under Section 1132(a)(3)). Guenther alleged LMC breached its fiduciary duty "to make accurate and correct representations concerning [Guenther's] ability to obtain additional service credit under the Plan after rehire." Specifically, he alleged LMC misrepresented the Plan by inducing him (and allegedly others) to return to work for LMC by "granting" his pre-hire bridging application while failing to disclose to him that the Plan Amendment barred him from bridging his additional credited service. LMC raised an affirmative defense that his claim was barred by the statute of limitations governing breach of fiduciary duty.

The district court granted LMC's motion for summary judgment, finding Guenther's claim barred by the statute of limitations. The court found that Guenther obtained "actual knowledge" of the breach when he received the November Letter from LMC, more than three years before he filed his claim. *See* 29 U.S.C. § 1113(2). The court concluded that Guenther "unequivocally stated he understood the November 7th letter to mean he was not entitled to a pension benefit on re-employment with Lockheed, and he knew from his online account he was not accruing credit." The court rejected Guenther's argument that disclosure of the Plan Amendment's existence was necessary for his breach claim to accrue, instead relying on Guenther's testimony that when he received the November Letter he clearly understood the *effect* of the Plan Amendment (i.e., his prior credited service would not bridge under the Plan), and this understanding clearly conflicted with LMC's representations during employment negotiations and in the July Letter.

Guenther then moved for reconsideration, citing previously unconsidered testimony from two fact witnesses affiliated with LMC. Guenther argued that these statements demonstrated the fraud and concealment necessary to invoke

ERISA's six-year statute of limitations, rendering his claim timely. The court denied Guenther's request for reconsideration because the evidence could have been discovered earlier with reasonable diligence, no circumstances beyond his control prevented him from obtaining it, and the testimony would not have changed the disposition of the case. This timely appeal followed.

After oral argument, we vacated submission and stayed this case pending a decision by the Supreme Court in *Intel Corporation Investment Policy Committee v. Sulyma*, 140 S. Ct. 768 (2020). In *Sulyma*, the Supreme Court affirmed the Ninth Circuit's determination that "actual knowledge" under Section 1113(2) requires more than "'merely a possible inference from ambiguous circumstances'" like disclosure alone, but rather knowledge that is actual. *Sulyma*, 140 S. Ct. at 775 (quoting *Sulyma v. Intel Corp. Inv. Policy Comm.*, 909 F.3d 1069, 1076 (9th Cir. 2018)).

## II

Congress enacted ERISA "to protect . . . the interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). ERISA requires a fiduciary to discharge its responsibilities "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." § 1104(a)(1). Fiduciaries breach this duty "if they mislead plan participants or misrepresent the terms or administration of a plan." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). Additionally, "[t]he duty of loyalty is one of the common law trust principles that apply to ERISA fiduciaries, and it

encompasses a duty to disclose." *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823 (9th Cir. 2007) (internal citation and footnote omitted). ERISA imposes "an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Id.* at 824–25 (quoting *Barker*, 64 F.3d at 1403). Thus, in addition to a duty not to mislead, fiduciaries have "an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits." *Acosta v. Pac. Enters.*, 950 F.2d 611, 619 (9th Cir. 1991) (as amended).

ERISA authorizes participants and beneficiaries to seek equitable relief for violations of this duty. § 1132(a)(3). It imposes a six-year statute of limitations commencing after either (1) the date of the last action constituting a part of the breach or violation, or (2) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation. § 1113(1). Alternatively, if the plaintiff obtains "actual knowledge of the breach or violation," the statute of limitations requires suit to be filed within three years of "the earliest date on which the plaintiff had [that] knowledge," § 1113(2),[2] except in the case of "fraud or concealment," where suit may be filed within six years of the date of discovery of the breach or violation, § 1113.

---

[2] If the plaintiff obtains actual knowledge of the breach or violation, his three-year limitation period described in Section 1113(2) applies only if it expires earlier than the default six-year limitation period outlined in Section 1113(1). § 1113.

**III**

We review the district court's order granting summary judgment de novo. *Sulyma*, 909 F.3d at 1072, *aff'd*, *Sulyma*, 140 S. Ct. 768. "[V]iewing the evidence in the light most favorable to the nonmoving party," we determine "whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Id.* LMC bears the burden of proving that Guenther filed suit outside the limitation period. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007).

At the heart of this dispute is whether Guenther had "actual knowledge" of an alleged fiduciary breach within the meaning of ERISA Section 1113(2). To determine a claim's accrual date under Section 1113, we use a two-step analysis. First, we "isolate and define the underlying violation upon which the plaintiff's claim is founded." *Sulyma*, 909 F.3d at 1072–73 (internal quotation marks omitted). Second, we determine "when the plaintiff had 'actual knowledge' of the alleged breach or violation," and whether suit was filed within three years of the date that knowledge was obtained. *Id*. at 1073 (quoting § 1113(2)).

Even if LMC shows Guenther had actual knowledge, he may still demonstrate LMC committed "fraud or concealment" under Section 1113, triggering a six-year limitation period that would render his claim timely. *See* § 1113.

**A**

As an initial matter, Guenther argues LMC waived its statute of limitations affirmative defense by (1) litigating the case to judgment without ever raising the defense and

(2) compelling him to exhaust administrative remedies without asserting the defense. We disagree.

First, the statute of limitations defense was unavailable to LMC in response to Guenther's FAC because no breach of fiduciary duty was alleged in the FAC. LMC's statute of limitations defense under Section 1113 only became available on remand after Guenther raised his breach of fiduciary duty claim in his SAC. At that point, LMC properly raised its affirmative defense in its answer to the SAC. LMC thus did not waive its right to raise this defense by not doing so in its initial answer.

Second, Guenther's argument that LMC waived the statute-of-limitations defense by advocating that Guenther exhaust administrative procedures also fails. Exhaustion is required prior to bringing Section 1132(a)(1)(B) suits to recover benefits for plan violations, *see Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995), but not for claims alleging a breach of fiduciary duty, *see Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014). LMC's insistence on exhaustion in response to Guenther's FAC—which did not raise a breach of fiduciary duty claim—thus did not mean the defense was waived for the SAC.

Accordingly, the district court did not abuse its discretion in determining LMC did not waive its statute of limitations affirmative defense.

## B

Guenther's sole cause of action in his SAC is for "Breach of Fiduciary Duty" under Section 1132(a)(3). Specifically, Guenther alleges that LMC breached its duty by failing, in

the July Letter granting his pre-hire bridging application, "to make accurate and correct representations concerning his ability to obtain additional service credit under the Plan after rehire." Guenther asserts LMC not only made an inaccurate affirmative representation in response to his inquiry whether his "prior periods of Lockheed/Lockheed Martin service [would] be bridged with [his] proposed current Lockheed Martin service," but also failed to disclose the existence of the 2005 Plan Amendment, which barred him from obtaining additional credited service under the Plan.

The facts as Guenther pled them in the SAC are sufficient to support the claim that when LMC sent the July Letter, it breached its fiduciary duty to not "mislead plan participants or misrepresent the terms or administration of a plan," *Barker*, 64 F.3d at 1403. LMC allegedly falsely represented to Guenther that he could bridge his prior and future credited service under the Plan, even though the Plan Amendment explicitly prevented him from "becom[ing] an active Participant or earn[ing] Credited Service under the Plan" upon rejoining LMC. This alleged misrepresentation took place when LMC sent the July Letter.[3]

Guenther separately contends, however, that LMC's failure to disclose the Plan Amendment to Guenther "until 2010 at the earliest" constitutes a "breach" distinct from its asserted misrepresentation in the July Letter, and that this

---

[3] At the summary judgment stage, we view all facts "in the light most favorable" to Guenther. *See Sulyma*, 909 F.3d at 1072. We note that the July Letter did not expressly state that Guenther could continue to accrue additional credited service under the Plan, and LMC contends that Guenther received a form of bridging because his prior period of service was included when determining certain benefits under the newly instituted CAP, although not for accrual of credited service under the Plan.

breach continued after the time LMC sent the July Letter. He argues this continuing breach should extend his Section 1113 limitation period. We agree with Guenther that LMC had a fiduciary "duty to disclose" the Plan Amendment's existence to him when he began the process of renewing employment at LMC (or at a minimum, its effect of barring his bridging request). *See NFL Ret. Plan*, 504 F.3d at 823. However, this alleged breach is not a continuing breach for purposes of Section 1113, separate from the alleged misrepresentation in the July Letter. Once a beneficiary knows of one breach in a series of breaches "of the same character . . . . awareness of [the] later breaches would impart nothing materially new." *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991). "The earliest date on which a plaintiff became aware of *any* [such] breach would thus start the limitation period of § 1113(a)(2) running." *Id.* (emphasis added). Failure to disclose the Plan Amendment was "of the same character," *id.*, as the alleged misrepresentation in the July Letter. This is because knowledge of the Plan Amendment was only useful to Guenther insofar as it would have informed him that his prior credited service could not be bridged. The district court thus correctly determined that once Guenther received the November Letter, Guenther's subsequent knowledge of the Plan Amendment's existence "impart[ed] nothing new" to him.[4]

---

[4] Even assuming Guenther's SAC alleges a separate breach of a different character (i.e., continuing failure to disclose the Plan Amendment's existence), his legal theory fails. Under this theory, his cause of action for LMC's ongoing failure to disclose could have accrued even *after* he obtained actual knowledge of the breach if he had learned about the Plan Amendment from sources other than LMC, because LMC's ongoing fiduciary duty to disclose the Plan Amendment's existence to him would have continued until LMC fulfilled its duty to

Because Guenther asserts no separate underlying violation beyond breach of fiduciary duty, LMC's act of sending the July Letter to Guenther is the violation providing the basis for his equitable surcharge claim. *See Sulyma*, 909 F.3d at 1072–73. LMC has thus met its burden of showing that the alleged underlying violation occurred on July 25, 2006. We therefore look at that violation for purposes of determining Guenther's "actual knowledge."

## C

The Section 1113 limitation period begins to run as soon as "the plaintiff has sufficient knowledge to be alerted to the particular claim." *Sulyma*, 909 F.3d at 1076. "This inquiry into the plaintiff's actual knowledge is entirely factual, requiring examination of the record." *Id.* at 1073 (citation and alterations omitted).

ERISA does not define "actual knowledge." But the Supreme Court recently confirmed that the plain language of Section 1113(2) requires that an individual "in fact be aware" of a piece of information (particularly given the statute's use of the qualifier "actual"). *Sulyma*, 140 S. Ct. at 776. This knowledge is distinguished from lower knowledge thresholds like presumed, implied, or constructive knowledge, where the law will sometimes

---

disclose it to him. We decline to adopt such an impractical and untenable "continuing violation" approach to the statute, which would effectively "read[] the 'actual knowledge' standard out" of Section 1113(a)(2). *See Phillips*, 944 F.2d at 520. LMC may have had a duty to *remedy* its failure to disclose *after* Guenther received the July Letter with its alleged misrepresentation. But that does not change the fact that a breach of the duty to disclose at least happened on July 25, 2006, and that Guenther was aware of the *effect* of this breach on November 7, 2006, as discussed further below.

impute knowledge of facts to a person when a reasonably diligent person would have (or should have) learned them. *Id.* Instead, actual knowledge under Section 1113(2) requires that a plaintiff's knowledge "be more than 'potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal.'" *Id.* (quoting Black's Law Dictionary 53 (4th ed. 1951)). And while constructive knowledge is insufficient to meet the actual knowledge threshold, "actual knowledge can be proved through 'inference from circumstantial evidence.'" *Id.* at 779 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Regarding what facts a defendant must show that a plaintiff was aware of, "actual knowledge of the breach" (1) "does not mean that a plaintiff has knowledge that the underlying action violated ERISA" and (2) "does not merely mean that a plaintiff has knowledge that the underlying action occurred." *Sulyma*, 909 F.3d at 1075. Instead, a defendant's burden is to show "the plaintiff [was] actually aware of the facts constituting the breach, not merely that those facts were available to the plaintiff," as well as something "extra," meaning that that the plaintiff "was actually aware of the *nature* of the alleged breach." *Id.* at 1075–76 (emphasis added).[5] "The key is that, whatever the underlying ERISA claim, the limitation period begins to run once the plaintiff has sufficient knowledge to be alerted to the particular claim." *Id.* at 1076.

---

[5] "For instance, in a section 1104 case, the plaintiff must be aware that the defendant has acted and that those acts were imprudent. But in, for example, a section 1106 case the plaintiff need only be aware that the defendant has engaged in a prohibited transaction, because knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred." *Sulyma*, 909 F.3d at 1075 (internal citation omitted).

A defendant's disclosure of all relevant information to a plaintiff strongly suggests that the plaintiff gained knowledge of the disclosed information. *Sulyma*, 140 S. Ct. at 777. To meet the actual knowledge threshold though, Section 1113(2) "requires more than evidence of disclosure alone." *Id.* For example, circumstantial evidence that "a plaintiff viewed the relevant disclosures" coupled with "evidence suggesting that the plaintiff took action in response to the information contained in them" could be sufficient to prove actual knowledge even if a plaintiff denies knowledge of the disclosure. *Id.* at 779.[6]

Here, direct evidence demonstrates Guenther had actual knowledge of LMC's alleged breach of its fiduciary duty more than three years before this action was filed. Guenther's deposition confirms he was fully aware upon receiving the November Letter that LMC had misrepresented in its July Letter that it would bridge his previously accrued credited service. For instance, Guenther testified: "I didn't find out that I'm not in the pension fund *until I got a letter in November* that Lockheed said, Oh, by the way, we didn't mean pension plan when we told you pension plan in the earlier [July] letter that was your basis for why you came back." He thus understood the November Letter's representation to be "[c]ompletely opposite of the first letter," and even asserted it was "obvious" that LMC contradicted itself in the two letters. When asked whether he understood at the time he read the November Letter that he was no longer able to participate in the Plan, he answered affirmatively that "[u]nfortunately, I understood what they

---

[6] "If a plaintiff's denial of knowledge is blatantly contradicted by the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Sulyma*, 140 S. Ct. at 779 (internal quotation marks omitted).

were saying, yeah," namely, "[a]t that point, I wasn't in any plan."**[7]**  His testimony thus confirms that on November 7, 2006, he was aware of the nature of LMC's alleged breach, even if he didn't know that LMC's actions violated ERISA specifically.  *See Sulyma*, 909 F.3d at 1075.  This qualifies as actual knowledge for purposes of Section 1113.

Circumstantial evidence of Guenther's actions taken before and after receiving the November Letter bolsters the conclusion that he had actual knowledge of LMC's alleged misrepresentation upon receipt of the November Letter. Guenther could have only viewed the November Letter to be a misrepresentation if he first interpreted the July Letter to mean he could bridge his prior credited service under the Plan as he asserts (rather than just under the CAP). Circumstantial evidence supports his assertion: while negotiating with the LMC recruiter earlier that year, the fact that Guenther explicitly stated that bridging his credited service under the Plan was a "key condition[]" of his return, coupled with the fact that receiving the July Letter was apparently sufficient for him to end his existing employment in reliance on its representation, suggests that he understood the July Letter to mean he could bridge his prior credited service under the Plan upon his return to LMC.

More importantly, after starting at LMC, Guenther regularly checked his account online to see if he was accumulating additional credited service under the Plan (he

---

**[7]** When asked whether receiving the November Letter answered his question whether he was accumulating new time on the Plan, Guenther answered: "Yes.  Not the way it was supposed to, but . . . . That was an answer."  Driving this point home even further, Guenther also testified: "It's very clear in the first letter, pension plan is called out. Second letter, it says, You're not in the pension plan."

was not),**[8]** but stopped checking after receiving the November Letter. This behavior suggests he no longer maintained his expectation that his prior credited service would bridge under the Plan after receiving the November Letter. Finally, Guenther contacted various company HR representatives immediately after receiving the November Letter, indicating his concern LMC had made a misrepresentation to him, causing him to urgently seek clarification regarding the status of his pension.

Guenther argues that under *Waller v. Blue Cross of California*, 32 F.3d 1337 (9th Cir. 1994), he could not have had actual knowledge until he understood the Plan Amendment had ended accrual of credited service for employees rehired after January 1, 2006. However, *Waller* is distinguishable because in that case the beneficiary only knew that the fiduciaries had purchased annuities for the employee benefits plan (not inherently a breach of fiduciary duty), but did not know they had used an infirm bidding process to select the annuity providers. *Id.* at 1341, 1345–46. Accordingly, the beneficiary's partial knowledge was insufficient to rise to the level of actual knowledge of a breach. *Id.* at 1341–42. Here, by contrast, Guenther testified he was fully aware at the time he received the November Letter that LMC's representation in the July Letter was not accurate.

---

**[8]** Guenther testified that "when I'd go on the web and look" during the period of time prior to receiving the November Letter, "[t]here was no years of service being added to my prior years of service for the pension plan," and this concerned him. He also stated that in October 2006, after he decided he had waited "long enough [because] they should be putting money into the pension plan and nothing's happening," he got "on the phone calling State Street and Lockheed saying, [']What the heck is going on here?[']"

We also reject Guenther's argument that the three-year limitation period should start running on a later date based on LMC's separate alleged breach of its fiduciary duty to disclose the Plan Amendment to him. The district court correctly determined that the *effect* of the Plan Amendment (i.e., preventing bridging of his prior credited service) is what mattered to Guenther, rather than the Plan Amendment's existence, and the November Letter "related the effect of the 2005 plan amendment, and [Guenther] stated he understood it."**[9]** His awareness from the November Letter was thus also sufficient to trigger the three-year limitation period for the alleged breach of LMC's duty to disclose, even without specific knowledge of the Plan Amendment's existence per se. We need not determine whether LMC breached its duty to disclose exclusively with the July Letter, or continuously thereafter as Guenther contends, because either way the date he obtained actual knowledge of the effect of that breach remains the same: November 7, 2006. *See Phillips*, 944 F.2d at 520 ("The earliest date on which a plaintiff became aware of any breach [of the same character in a series of breaches] would thus start the limitation period of § 1113(a)(2) running."). Accordingly, even if he didn't learn about the Plan Amendment's existence until his 2010 phone call with the ESC, that knowledge "impart[ed] nothing materially new" to him beyond the November Letter, and is not the "earliest

---

**[9]** In any event, by the time he received the November Letter, Guenther knew that "information material to [his] circumstance," *Barker*, 64 F.3d at 1403, had been concealed from him, either in the July Letter or the November Letter, regarding whether LMC would allow him to bridge his prior accrued credited service. At a minimum, therefore, he was aware of the "nature of [LMC's] alleged breach" of its duty to disclose. *See Sulyma*, 909 F.3d at 1075.

date on which [he] became aware of *any* breach[.]"  *See id.* (emphasis added).

Because Guenther failed to bring suit within three years of November 7, 2006 (the earliest date he had actual knowledge of LMC's alleged breach of its fiduciary duty), his suit is barred by ERISA's statute of limitations.  *See* § 1113(2).

## D

Alternatively, Guenther claims that even if he had actual knowledge of the breach, because LMC engaged in fraud via the July Letter and concealment via LMC's failure to disclose the Plan Amendment "both prior to and after the July 25, 2006 Letter," ERISA's six-year limitation period applies instead of the three-year period.  *See* § 1113.

Our circuit has held that this exception only applies when a defendant has "taken steps to *hide* [its] breach of fiduciary duty."  *Barker*, 64 F.3d at 1402 (emphasis added).  Under this approach, incorporated from the common law doctrine of fraudulent concealment, a plaintiff must establish "affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief."  *Id.* (internal quotation marks and emphasis omitted). Plaintiff bears the burden of pleading and proving that such affirmative acts occurred.  *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).

To be sure, Guenther has set forth facts suggesting that LMC misrepresented his ability to bridge his terms of service, and failed to disclose material information regarding the same while Guenther was negotiating renewed employment with LMC.  But his claim does not rise to the

level of "fraud or concealment" under our precedent. Guenther has failed to produce any evidence that LMC made "knowingly false misrepresentations with the intent to defraud" Guenther when it sent him the July Letter, *see Barker*, 64 F.3d at 1401, much less evidence of affirmative acts taken by LMC to *hide* that misrepresentation as required in our circuit, *see id.* at 1402. Mere failure to disclose the Plan Amendment's existence does not demonstrate that LMC hid its breach from Guenther. Evidence that Guenther was "bounced . . . from one department to another, never answering his questions" over the course of several years is indicative of bureaucratic inefficiency, but does not on its own rise to the level of affirmative concealment.[10] Absent the necessary record evidence, Guenther's argument for application of the fraud or concealment exception fails.

Accordingly, the district court correctly determined ERISA's six-year limitation period for fraud or concealment does not apply to Guenther's claim.

# IV

The district court's order denying Guenther's post-judgment motion for reconsideration of summary judgment

---

[10] Guenther argues in the alternative that even if LMC's continuing failure to disclose the Plan Amendment does not qualify as a separate affirmative act of concealment, the July Letter was a "self-concealing act" with the concealment committed in the course of the underlying wrong itself, thus satisfying the fraud or concealment exception on its own. We agree with the district court that the facts constituting the claim for breach of fiduciary duty alone cannot also serve as the basis for fraud or concealment—otherwise, the exception would swallow the rule. Instead, a defendant must take affirmative steps "beyond the breach itself [with] the effect of concealing the breach from its victims." *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497, 503 (3d Cir. 2001).

is reviewed for abuse of discretion. *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1100 (9th Cir. 2006). "Judgment is not properly reopened absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (internal quotation marks omitted).

Guenther fails to show how the new deposition testimony he obtained from two witnesses affiliated with LMC rises to the level of "highly unusual circumstances," nor does he cite any circumstances beyond his control which prevented him from obtaining and producing the deposition testimony of LMC officials for the district court's review before it issued its summary judgment order. Instead of raising the kind of newly discovered evidence that would merit reconsideration, Guenther is using Federal Rules of Civil Procedure 59(e) and 60(b) to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

The district court therefore did not abuse its discretion by denying Guenther's motion for reconsideration.

\*     \*     \*

Because Guenther had actual knowledge of LMC's alleged breach of its fiduciary duty, yet failed to bring suit within the applicable three-year limitation period under ERISA, his action is time-barred.

**AFFIRMED**.